IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § § | | |
| Plaintiff, § § | | |
| v. § | Civil Action No. 3:09-CV-0298-N | |
| § | | |
| STANFORD INTERNATIONAL BANK LTD., *et al.*, § § § | | |
| Defendants. § § | | |
| OFFICIAL STANFORD INVESTORS COMMITTEE, § § § | | |
| Plaintiff, § § | | |
| v. § | Civil Action No. 3:12-CV-01447-N | |
| § | | |
| BDO USA, LLP, *et al.*, § § | | |
| Defendants. § | | |

## ORDER

This Order addresses the Official Stanford Investors Committee's ("OSIC") motion to approve proposed settlement agreement with BDO USA, LLP ("BDO") [2137] *in* 3:09-CV-0298; [52] *in* 3:12-CV-01447-N.[1]  The Court grants the motion.

---

[1] The Court addresses OSIC's Motion to Approve the Proposed Notice of Settlement with BDO, to Enter the Bar Order, to Enter the Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees by separate Orders signed on this date.

ORDER – PAGE 1

## I. THE BDO SETTLEMENT AGREEMENT AND HEARING

This motion arises from a compromise reached between parties in three cases: *SEC v. Stanford Int'l Bank, Ltd., et al.*, 3:09-CV-0298-N (the "SEC Action"); *The Official Stanford Investors Committee v. BDO USA, LLP, et al.*, 3:12-CV-01447-N (the "Committee Litigation"); and *Philip Wilkinson, et al. v. BDO USA, LLP, et al.*, 3:11-CV-01115-N (the "Investor Litigation"). These cases each arise from the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). Plaintiffs in these cases are the court-appointed Receiver Ralph S. Janvey (the "Receiver"), OSIC, and a group of investors who purchased fraudulent certificates of deposit ("CDs") from Stanford. Plaintiffs sued BDO, an accounting firm that provided audit services to certain Stanford entities, on claims including audit malpractice, aiding and abetting breaches of fiduciary duty, aiding and abetting a fraudulent scheme, aiding and abetting fraudulent transfers, aiding and abetting violations of the Texas Securities Act, and aiding and abetting a conspiracy.

After extensive negotiation before and after reaching an agreement in mediation, the parties executed a settlement agreement to resolve these claims. Essentially, under the settlement agreement, BDO will pay $40 million to the Receivership Estate to be distributed to Stanford investors in exchange for a global release of all past, present, and future claims against BDO arising from its relationship with Stanford. The settlement agreement requires the parties to seek the Court's approval for the settlement and the related bar orders. App. Supporting Mot. Approve 13, ¶ 29 [2138-1].

The parties now seek the Court's approval of that settlement agreement. Upon learning of the settlement agreement, numerous investors filed objections to the proposed settlement. The objections to the settlement amount rest largely on two grounds: (1) that the amount of the settlement is inadequate compensation to the defrauded investors, and (2) that the settlement does not sufficiently penalize BDO in terms of out-of-pocket costs. *See* Obj. Proposed Settlement 4 [2202].

After reviewing the proposed settlement agreement and the related objections and briefing, on August 28, 2015 the Court held a hearing on the proposed settlement. During the hearing, the parties agreed to provide supplemental information ex parte and under seal for the Court's in camera review to assist the Court in evaluating the settlement agreement's sufficiency.

## II. THE STANDARD FOR SETTLEMENT APPROVAL

Ordinarily, parties are free to settle cases amongst themselves without court involvement. *See Ibarra v. Tex. Empl. Com'n*, 823 F.2d 873, 878 (5th Cir. 1987). However, in the equity receivership context, parties have sought and courts have rendered decisions regarding whether to approve or reject settlement agreements based on courts' wide discretion in administering an equity receivership. *See SEC v. Kaleta*, 2012 WL 401069, at *4 (S.D. Tex. 2012) ("[T]he district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.") (internal quotation marks and citation omitted), *aff'd* 530 Fed. Appx. 360 (5th Cir. 2013); *see also Gordon v. Dadante*, 336 F. App'x 540 (6th Cir. 2009) ("no federal rules prescribe a particular standard for approving

settlements in the context of an equity receivership; instead a district court has wide discretion to determine what relief is appropriate."); *Sterling v. Stewart*, 158 F.3d 1199, 1201 (11th Cir. 1998) ("Determining the fairness of the settlement [in an equity receivership] is left to the sound discretion of the trial court and we will not overturn the court's decision absent a clear showing of abuse of that discretion.") (internal quotation marks and citation omitted). "In the absence of any evidence that a proposed settlement is of insufficient value, a district court may conclude that a proposed settlement amount is sufficient." *Kaleta*, 2012 WL 401069 at *4.

### III. THE COURT APPROVES THE BDO SETTLEMENT

The Court finds that the proposed settlement is in the Receivership Estate's best interest and accordingly approves the settlement agreement. Based on the pleadings, counsel's arguments, filed objections, and supplemental information reviewed in camera, the Court concludes that the $40 million settlement amount is adequate compensation to Stanford investors in light of the risks and costs of litigation, the likelihood of success on the merits, and collectability concerns.

For the purpose of compensating Stanford investors, $40 million is a sufficient settlement amount. While the Court notes the objectors' argument that the settlement amount represents a small fraction of the investors' losses, the Court also gives weight to the fact that this amount was not settled on in a vacuum. Under the circumstances present here, $40 million is a fair settlement amount. The Court credits OSIC's analysis of the strengths and weaknesses of its claims and its estimation of its claims' true value to the Receivership

Estate, which the Court reviewed in camera. OSIC's confidential analysis does not provide independent grounds on which to judge this settlement, but rather provides further support to the arguments made in the motion to approve the settlement agreement.

Some objectors argue that there is not enough financial information in the record to allow the court to determine whether the settlement is insufficient. *See* Obj. Proposed Settlement 4. This argument improperly inverts the inquiry. "In the absence of any evidence that a proposed settlement is of insufficient value, a district court may conclude that a proposed settlement amount is sufficient." *Kaleta*, 2012 WL 401069 at *4. While the objectors' argument would require affirmative evidence that an agreement is sufficient (i.e., not insufficient), under the correct standard, a court may conclude that an amount is sufficient absent evidence of insufficiency. The Court has reviewed in camera relevant financial information from BDO that supports the arguments made during the settlement hearing. Thus, the Court concludes that the settlement amount is sufficient.

The Court concludes that whether BDO pays the settlement out-of-pocket or through insurance has no bearing on the analysis of whether the agreement fairly compensates the Stanford investors. Plaintiffs brought these law suits to make whole the defrauded investors to the greatest extent possible. Analyzing whether a settlement agreement achieves that objective requires a focus on the amount obtained compared to the reasonably possible outcomes of not settling. The degree to which the amount obtained punishes the defendant's conduct through out-of-pocket cost is not a persuasive factor in that analysis. If anything, the source of payment of the settlement funds – BDO's insurance policies – weighs in favor

of approving the settlement. The insurance funds' availability was conceivably the most reliable source of collectable funds. If the amount sought in litigation exceeded the available insurance amount, it is reasonable to conclude that the excess amount would be more difficult to collect, thus reducing the benefit of not settling.

Given the costs and risks associated with further litigation, the strengths and weaknesses of the claims against BDO, and the collectability concerns brought before the Court, the Court concludes that the settlement agreement is a fair and reasonable agreement that prevents further dissipation of Receivership assets and provides adequate compensation to the Receivership Estate under the circumstances.

## CONCLUSION

The Court concludes that the settlement agreement is in the best interests of the Receivership Estate and accordingly grants the motion to approve proposed settlement.

Signed September 23, 2015.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 6